IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

BOBBY DALE MARTIN, )
                                                       )
               Plaintiff, )
v.                                               )        Case No. CIV-12-335-FHS-SPS
                                                       )
CAROLYN W. COLVIN, )
Acting Commissioner of the Social )
Security Administration,[1] )
                                                      )
               Defendant. )

## REPORT AND RECOMMENDATION

The claimant Bobby Dale Martin requests judicial review pursuant to 42 U.S.C. § 405(g) of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for benefits under the Social Security Act. The claimant appeals the decision of the Commissioner and asserts that the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons discussed below, the undersigned Magistrate Judge RECOMMENDS that the Commissioner's decision be REVERSED and REMANDED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or

---

[1] On February 14, 2013, Carolyn Colvin became the Acting Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Ms. Colvin is substituted for Michael J. Astrue as the Defendant in this action.

mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) [citation omitted]. The term substantial evidence has been interpreted by the United States Supreme Court to require "'more than a mere scintilla. It means such relevant

---

[2] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. *Id*. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity, or if his impairment is not medically severe, disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant suffers from a listed impairment (or impairments "medically equivalent" to one), he is determined to be disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must establish that he lacks the residual functional capacity (RFC) to return to his past relevant work. The burden then shifts to the Commissioner to establish at step five that there is work existing in significant numbers in the national economy that the claimant can perform, taking into account his age, education, work experience and RFC. Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The Court may not reweigh the evidence nor substitute its discretion for that of the agency. *Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born on October 5, 1967, and was forty-three years old at the time of the administrative hearing (Tr. 38, 136). He earned his GED and completed one year at DeVry University (Tr. 40). The claimant has past relevant work as an electrician, electrician's helper, auto body repairer, and metal finisher (Tr. 29). The claimant alleges that he has been unable to work since May 4, 2008 because of deep vein thrombosis (DVT) and chronic obstructive pulmonary disease (COPD).

## Procedural History

The claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and supplemental security income payments under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85, on January 12, 2010 (Tr. 21). His applications were denied. ALJ Osly F. Deramus conducted an administrative hearing and found that the claimant was not disabled in a written opinion dated May 3, 2011. (Tr.

21-31). The Appeals Council denied review, so the ALJ's written opinion is the final decision of the Commissioner on appeal. *See* 20 C.F.R. §§ 404.981; 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity ("RFC") to perform sedentary work, but could not crawl or kneel and could stooping and crouching only occasionally and balance frequently (Tr. 24). The ALJ concluded that although the claimant could not return to any past relevant work, he was nevertheless not disabled because there was other work he could perform, *i. e.*, document preparer (Tr. 30-31).

## Review

The claimant contends that the ALJ erred: (i) by failing to properly analyze the opinion of his treating physician, Dr. Michael Irvin; (ii) by failing properly analyze whether he met a listed impairment at step three; and, (iii) by failing to properly analyze the impact of his obesity on his other impairments. The undersigned Magistrate Judge finds the claimant's first contention persuasive.

The claimant was evaluated by Dr. John W. Ellis, M.D. in connection with a worker's compensation claim on May 21, 2008 (Tr. 280-83). At that time, the claimant complained of breathing problems characterized by shortness of breath and air flow (Tr. 281). Dr. Ellis noted on examination that claimant demonstrated an inability to catch his breath, laborious breathing, and wheezing (Tr. 281). Dr. Ellis diagnosed claimant with

4

occupationally induced asthma and bronchitis and ultimately found that the claimant's employment was the predominate cause of claimant's injuries (Tr. 282). Dr. Ellis elaborated that claimant's condition would "continue to result in a permanent anatomical abnormality for a long or indefinite period of time" and that claimant's "ability to earn wages at the same level as before ha[d] been permanently impaired" (Tr. 282).

The record reveals that the claimant first received treatment from Dr. Irvin on January 11, 2010 for trouble breathing due to the inhalation of chemicals at work (Tr. 268). Dr. Irvin noted that claimant had shortness of breath and wheezing and diagnosed claimant with COPD (Tr. 269). On August 30, 2010, the claimant presented to an emergency room in Hugo, Oklahoma with complaints of right leg pain with edema and was treated by Dr. Irvin (Tr. 300). Upon examination, Dr. Irvin concluded that the claimant had a deep vein thrombosis (DVT) in his right leg, and admitted him to the hospital and administered Lovenox and Coumadin for treatment (Tr. 300). Dr. Irvin discharged the claimant on September 3, 2010, and ordered the claimant to refrain from physical activity over the weekend and long riding trips, and advised him to keep his leg propped up (Tr. 293). Dr. Irvin noted that he would be following the claimant closely. The claimant was admitted to Choctaw Memorial Hospital on October 12, 2010 for a large DVT in his right leg (Tr. 322). The claimant remained in the hospital until October 16, 2010, at which time Dr. Irvin noted that he would continue to follow the claimant closely at home (Tr. 322). Dr. Irvin also advised claimant "to restrict his activities to a minimum, just going to the bathroom and getting up and eating" (Tr. 322). The claimant

attended follow up visits with Dr. Irvin starting October 20, 2010 and continuing until March 7, 2011 (Tr. 346).

Medical opinions from a treating physician are entitled to controlling weight if they were "'well-supported by medically acceptable clinical and laboratory diagnostic techniques . . . [and] consistent with other substantial evidence in the record.'" *See Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004), *quoting Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). If a treating physician's opinions were not entitled to controlling weight, the ALJ must determine the proper weight to give them by analyzing the factors set forth in 20 C.F.R. § 416.927. *Id.* at 1119 ("Even if a treating physician's opinion is not entitled to controlling weight, '[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in § [416.927].'"), *quoting Watkins*, 350 F.3d at 1300. Those factors are: (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Watkins,* 350 F.3d at 1300-01, *citing Drapeau v. Massanari,* 255 F.3d 1211, 1213 (10th Cir. 2001) [quotation omitted]. Finally, if the ALJ decides to reject a treating physician's opinions entirely, "he must . . . give specific, legitimate

reasons for doing so[,]" *id*. at 1301 [quotation marks omitted; citation omitted], so it is "clear to any subsequent reviewers the weight [he] gave to the treating source's medical opinion and the reasons for that weight." *Id*. at 1300 [quotation omitted].

In this case, the ALJ mentioned the physical restrictions imposed on the claimant by Dr. Irvin in finding his DVT to be a severe impairment at step two, but imposed no corresponding restrictions in assessing the claimant's RFC at step four. It is not clear if the ALJ considered Dr. Irvin to be a treating physician for purposes of the claimant's DVT; in order for a treating physician relationship to exist, the physician must have "seen the claimant 'a number of times and long enough to have obtained a longitudinal picture of [the claimant's] impairment[.]'" *Doyal v. Barnhart*, 331 F.3d 758, 763 (10th Cir. 2003), *quoting* 20 C.F.R. § 416.927(d)(2)(i). But even if Dr. Irvin was not considered to be a treating physician whose opinion was entitled to controlling weight, the ALJ had to determine the proper weight to give his opinion by considering the factors set forth in 20 C.F.R. §§ 404.1527(d); 416.927(d). *See Hamlin v. Barnhart,* 365 F.3d 1208, 1215 (10th Cir. 2004) ("An ALJ must evaluate *every* medical opinion in the record, *see* 20 C.F.R. § [416.927(d)], although the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional. . . . An ALJ must also consider a series of specific factors in determining what weight to give *any* medical opinion.") [emphasis added], *citing Goatcher v. Department of Health & Human Services,* 52 F.3d 288, 290 (10th Cir. 1995). This was especially important here because

the *only* evidence regarding the claimant's DVT (which the ALJ found to be a severe impairment) comes from Dr. Irvin's treatment of the claimant.

The Commissioner argues that the restrictions imposed by Dr. Irvin related only to the claimant's individual episodes of DVT and were not intended to be as limitations on the claimant's ability to perform work-related activities. This is not entirely clear from the medical record, and in any event the ALJ offered no such explanation for declining to impose any limitations in the claimant's RFC corresponding to his DVT (which the ALJ clearly did find to be a severe impairment). *See, e. g., Haga v. Astrue,* 482 F.3d 1205, 1207-08 (10th Cir. 2007) ("[T]his court may not create or adopt post-hoc rationalizations to support the ALJ's decision that are not apparent from the ALJ's decision itself."); *Allen v. Barnhart,* 357 F.3d 1140, 1142 (10th Cir. 2004) ("Affirming this post hoc effort to salvage the ALJ's decision would require us to overstep our institutional role and usurp essential functions committed in the first instance to the administrative process."). *See also Robinson v. Barnhart,* 366 F.3d 1078, 1084 (10th Cir. 2004) ("[T]he magistrate judge erred in upholding the Commissioner's decisions by supplying possible reasons for giving less weight to or rejecting the treating physician's opinion. The ALJ's decision should have been evaluated based solely on the reasons stated in the decision."), *citing Burlington Truck Lines, Inc. v. United States,* 371 U.S. 156, 168-169 (1962).

Accordingly, the decision of the Commissioner should be reversed and the case remanded to the ALJ for a proper analysis of Dr. Irvin's opinions. On remand, the ALJ

should reconsider Dr. Irvin's opinions in accordance with the appropriate standards and determine what impact, if any, such reconsideration has on the claimant's ability to work.

## Conclusion

The undersigned Magistrate Judge finds that correct legal standards were not applied by the ALJ and that the decision of the Commissioner is therefore not supported by substantial evidence. Accordingly, the Magistrate Judge RECOMMENDS that the ruling of the Commissioner of the Social Security Administration be REVERSED and the case REMANDED for further proceedings not inconsistent herewith. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

**DATED** this 13th day of September, 2013.

Steven P. Shreder
United States Magistrate Judge
Eastern District of Oklahoma